```
UNITED STATES DISTRICT COURT                          USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                         DOCUMENT
------------------------------------------------------------ X  ELECTRONICALLY FILED
                                                  :   DOC #:_____
  UNITED STATES OF AMERICA,                       :   DATE FILED: 3/18/2019
                                                  :
                                                  :        17 Cr. 262 (LGS)
                      -against-                   :
                                                  :        OPINION AND ORDER
  MENACHEM ABRAMOV and SHOLOM                     :
  MURATOV,                                        :
                                    Defendants.   :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

After a jury trial, Defendants Menachem Abramov and Sholom Muratov were convicted of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. At the end of the Government's case, Defendants moved pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal. The Court took the motion under advisement. For the following reasons, the motion is denied.

## I. STANDARD

Rule 29 allows a defendant to move for a judgment of acquittal based on the insufficiency of the evidence. Fed. R. Crim. P. 29(a). "A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government . . . ." *United States v. Taylor*, 816 F.3d 12, 22 (2d Cir. 2016) (internal quotation marks omitted). "A judgment of acquittal can be entered only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted). "Under Rule 29(b), when a district court reserves decision on a defendant's Rule 29 motion at the close of the Government's evidence, 'it must decide the motion on the basis of the evidence at the time the ruling was reserved.'" *United*

*States v. Truman*, 688 F.3d 129, 139 (2d Cir. 2012) (quoting Fed. R. Crim. P. 29(b)); *accord United States v. Atilla*, No. 15 Crim. 867, 2018 WL 791348, at *3 (S.D.N.Y. Feb. 7, 2018).

## II. DISCUSSION

Viewing the evidence presented in the Government's case in chief in the light most favorable to the Government, as required on this motion, a rational trier of fact could have concluded that the essential elements of conspiracy to commit mail fraud were established beyond a reasonable doubt. Defendants' motion is accordingly denied.

### A. Conspiracy to Commit Mail Fraud

"To prove conspiracy, the government must demonstrate [1] the existence of the conspiracy and [2] the defendant's knowing participation." *United States v. McGinn*, 787 F.3d 116, 124 (2d Cir. 2015); *see also United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015) ("a conspiracy conviction under § 1349 does not require proof of an overt act"). "In the conspiracy context, moreover, the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence." *United States v. Dove*, 884 F.3d 138, 151 (2d Cir. 2018) (internal quotation marks omitted).

#### 1. Existence of the Conspiracy

"The essential elements of [mail fraud] are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails . . . to further the scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (some alteration in original) (internal quotation marks omitted).

> In order to prove the existence of a scheme to defraud, the government must also prove that the misrepresentations were material, and that the defendant acted with fraudulent intent. A statement is material if the misinformation or omission would naturally tend to lead or is capable of leading a reasonable [person] to change [his] conduct.

*Id.* (internal quotation marks omitted) (alterations in original).

The Government presented evidence from which a rational trier of fact could find the existence of a conspiracy to commit mail fraud beyond a reasonable doubt.

There was sufficient evidence of a scheme to defraud. A group of individuals traveled to India together (Tr. 429:21–430:6; 432:4–9), had meals together (Tr. 488:22–489:5; 542:19–543:5), were directed by the same individual -- Shah -- to conduct business a certain way (Tr. 489:6–493:9), brought all diamonds to Foozailov's office (Tr. 423:24–424:4; 453:5–10; 499:18–25; 501:9–22; 553:1–4) and left all phones in Foozailov's office (Tr. 573:1–9). Romano Diamonds, owned by Foozailov, sent funds to companies that were subsequently sent to the Indian diamond merchants (Tr. 981:6–982:4). Critically, there was evidence that the misrepresentations and omissions were material and made with the intent to defraud. The misrepresentations and omissions included how long the companies had been in the diamond business, that the companies had prior transactions with other diamond merchants, that Foozailov controlled the companies and that the companies would pay for the diamonds. These misrepresentations and omissions were made to induce merchants into selling more diamonds than usual to a single buyer. (Tr. 421:6–15; 490:7–491:6) Multiple victims and an expert testified that this information was material to a creditworthiness determination, and the victims testified that they would not have done business with the companies or to the extent that they did if they have known differently. (*E.g.*, Tr. 67:1–7; 129:5–10; 361:14–18; 906:21–907:4) The losses of the Indian diamond merchants total more than $12 million. (*E.g.*, Tr. 997:19–23)

There was ample evidence that diamonds were the object of the scheme and the mails were used to further the scheme. The individuals sought and obtained diamonds from the Indian diamond merchants (*e.g.*, Tr. 421:6–15; 511:8–9; 685:19–21; 810:6–9), and the diamonds were

sent from India to New York through private mail carriers Malca-Amit and Brinks (*e.g.*, Tr. 272:1–13; 498:7–500:6; 795:4–796:16).

In sum, the Government offered sufficient evidence of a group of individuals who defrauded diamond merchants in India through a scheme that involved intentional misrepresentations and omissions and that, as part of the scheme, members of the conspiracy caused diamonds to be shipped to New York through the mails. A rational trier of fact could accordingly find the existence of a conspiracy to commit mail fraud beyond a reasonable doubt.

### 2. Knowing Participation

"On a charge of conspiracy, the Government must prove (1) knowing participation or membership in the scheme charged and (2) some knowledge of the unlawful aims and objectives of the scheme." *United States v. Lange*, 834 F.3d 58, 76 (2d Cir. 2016) (internal quotation marks omitted). "Conscious avoidance . . . may be used to support a finding with respect to . . . knowledge of the conspiracy's unlawful goals." *Id.* (internal quotation marks omitted).

"The government may prove the defendant's knowing participation in a conspiracy through circumstantial evidence." *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) (internal quotation marks and citations omitted).

> The government need not prove the defendant's familiarity with all of the conspiracy's details; it may demonstrate simply the defendant's awareness of the general nature and extent of the conspiracy. It is not necessary to prove that the defendant expressly agreed with other conspirators on a course of action; it is enough, rather, to show that the parties ha[d] a tacit understanding to carry out the prohibited conduct. Indeed, a defendant may be a conspirator even if he knew only one other member of the group, and a single act may be sufficient for an inference of [his] involvement in a criminal enterprise of substantial scope at least if the act is of a nature justifying an inference of knowledge of the broader conspiracy.

*Id.* at 61 (internal quotation marks and citations omitted) (alterations in original).

"[I]n order to prove conspiracy, the government must demonstrate that the defendant possessed the specific intent to commit the offenses that were [its] objects. This requires the government to prove at least the degree of criminal intent necessary for the substantive offense itself." *Id.* (internal quotation marks and citation omitted) (some alteration in original). The mens rea for mail fraud is "the specific intent to harm or defraud the victims of the scheme." *United States v. Rybicki*, 354 F.3d 124, 151 (2d Cir. 2003) (internal quotation marks omitted).

Viewing the evidence in the light most favorable to the Government, there is sufficient evidence from which a rational trier of fact could find, beyond a reasonable doubt, that Defendants knowingly and intentionally joined the conspiracy with knowledge of its unlawful aims.

The evidence was sufficient for a rational trier of fact to find that Defendants knowingly and intentionally participated in the conspiracy. Foozailov asked Abramov to represent Stud Masters (Tr. 417:25–418:23; 423:10–14); Abramov subsequently made several trips in which he represented Stud Masters and consummated deals with various diamond merchants (*e.g.*, Tr. 271:22; 140:3–9). Abramov brought in Muratov (Tr. 454:7–13; 460:24–462:3); Muratov represented Millennium in multiple deals for the purchase of diamonds (*e.g.*, Tr. 355:20–23). In New York, both Muratov and Abramov picked up diamonds from the mail carriers and brought them to Foozailov's office (*e.g.*, Tr. 187:8-17; 499:18–501:7), and Abramov subsequently sold the diamonds (*e.g.*, Tr. 501:5–22). This evidence -- though not exhaustive of that presented at trial -- was sufficient to find that Defendants knowingly and intentionally participated in the conspiracy.

The evidence was also sufficient for a rational trier of fact to find that Defendants had knowledge of the unlawful aims of the conspiracy -- which included inducing diamond

5

merchants to sell more diamonds on credit than usual to one buyer. Viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could have concluded that Defendants knew that it was material for the diamond merchants to understand how long the companies had been in the diamond business and who controlled the companies. For example, Shah told Defendants that it would be a problem if the diamond merchants knew that they were working together (Tr. 490:7–491:6); Defendants pretended not to know other members of the conspiracy in front of the Indian diamond merchants (*e.g.*, Tr. 347:16–349:5; 490:7–24; 496:16–498:4) and Defendants knew the companies were new yet stood by while the Indian diamond merchants were told that the companies had several years of diamond business experience (*e.g.*, Tr. 107:20–108:2; 121:15–122:11; 268:1–14; 277:11–278:1). Also, in June 2016, Muratov told Mullakandov that he knew what was going on and needed more compensation (Tr. 545:9–22), and Abramov told Mullakandov he would take care of it (Tr. 545:24–546–2). After this exchange Defendants continued to participate by buying diamonds, selling diamonds (*e.g.*, Tr. 962:1–964:25), and pretending not to know others in the conspiracy (Tr. 962:15–23). This evidence -- though not exhaustive of that presented at trial -- was sufficient for a rational trier of fact to conclude that Defendants knew of the conspiracy's unlawful objective and continued to participate.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for a judgment of acquittal is DENIED.

Dated: March 18, 2019
      New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**

6